UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LYNDA BERTOLONE,

    Plaintiff,

v.                            CASE No. 8:13-CV-1685-T-TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[*] Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, the decision will be affirmed.

I.

The plaintiff, who was fifty-seven years old at the time of the administrative hearing and who has a high school education, has worked as an orthodontic dental assistant (Tr. 28, 29). She filed a claim for Social Security disability benefits, alleging that she became disabled due to Crohn's

---

[*]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 17).

disease, fibromyalgia, and a diskectomy (Tr. 123). The claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "fibromyalgia, history of cervical spondylosis and stenosis status post diskectomy, degenerative disc disease of the lumbar spine, neuropathy, degenerative changes of the right hip, history of right shoulder bursitis impingement syndrome, status post right shoulder arthroscopy, history of breast cancer status post lumpectomy, Crohn's disease, and hypothyroidism" (Tr. 13). He concluded that, with these impairments, the plaintiff (Tr. 14):

> has the residual functional capacity to lift and carry up to 20 pounds occasionally, and up to 10 pounds frequently, light work as defined in 20 CFR 404.1567(b). The claimant can stand or walk approximately 6 hours per eight hour day with normal breaks and sit for six hours per eight hour day. The claimant can never climb ladders, ropes, ropes [sic] or scaffolds and the remaining postural activities are limited to an occasional basis, including climbing ramps and stairs, and balancing, stooping, crouching, kneeling, and crawling. Bilateral overhead reaching is limited to a frequent basis. The claimant must also avoid concentrated

exposure to hazards, extreme cold, extreme heat,
and irritants such as fumes, odors, dusts, and gases.

The law judge determined that, despite these limitations, the plaintiff could

return to her past position of dental assistant as it is generally performed (Tr.

17). Accordingly, the law judge ruled that the plaintiff was not disabled (id.).

The Appeals Council let the decision of the law judge stand as the final

decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a

claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

... has lasted or can be expected to last for a continuous period of not less

than twelve months."   42 U.S.C. 423(d)(1)(A).   A "physical or mental

impairment," under the terms of the Social Security Act, is one "that results

from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic

techniques." 42 U.S.C. 423(d)(3). The Act provides further that a claimant

is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on four grounds. Specifically, the plaintiff argues that the law judge erred by (1) improperly dismissing her complaints of pain; (2) disregarding the records from her treating physicians; (3) failing to analyze properly the demands of her past work; and (4) not considering all of her impairments in the residual functional capacity assessment.   None of these contentions warrants reversal.

A. As indicated, the plaintiff contends first that the law judge erred by dismissing her subjective complaints of pain and fatigue (Doc. 19, pp. 10-12). This assertion is without merit.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 14). Moreover, he set out the appropriate standard (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Significantly, the law judge did not wholly discount the plaintiff's complaints of pain. The law judge discussed the plaintiff's testimony in his decision, and he specifically noted the plaintiff's allegations of pain in her hands, feet, arms, neck, shoulders, back, and hips (Tr. 14-15). After considering the plaintiff's testimony, along with the objective medical evidence, the law judge restricted the plaintiff to light work activity with postural, manipulative, and environmental limitations (Tr. 14).

In his credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's subjective complaints. Specifically, the law judge stated (Tr. 15) (emphasis in original):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's overall allegations, the undersigned does not find them credible. From the outset, the undersigned notes that the claimant's allegations are so extreme they are hardly plausible. At the hearing, when questioned about her pain level, the claimant indicated that her pain, without medication, is a 15 on a scale of 1-10. The undersigned finds it questionable that anyone could experience anything close to this alleged degree of pain and have no treatment in the emergency room. Additionally, the undersigned questions how the claimant is able to complete any activities of daily living, with pain of a 7 on her best day. Of additional note is that on the claimant's pain questionnaire, when she was asked what relieves her pain, she indicated that **nothing** relieves her pain. Additionally, the claimant completely denied being able to lift any amount of weight on a frequent basis. The undersigned also takes note of inconsistencies in the claimant's allegations. As noted above, the claimant indicated in her pain questionnaire that nothing relieves her pain. However, records from the Gessler Clinic describe the claimant's pain relief as "moderate to complete" (Exhibit 2F p. 11). Lastly, the claimant testified that she can only stand and/or walk for 20 minutes. However, records from Bond Clinic on February 15, 2010 reveal that the claimant admitted

to being able to walk three to four miles (Exhibit 6F p. 4). For these reasons, to the extent the claimant has made allegations inconsistent with the residual functional capacity outlined above, the undersigned affords them little weight (Exhibit 8E, 2F, and 6F).

This explanation is sufficient to discount the plaintiff's subjective complaints. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

The plaintiff complains about the law judge's consideration of her activities of daily living. However, it is clearly proper for the law judge to consider such activities in assessing the plaintiff's credibility. Macia v. Bowen, 829 F.2d 1009, 1011-12 (11th Cir. 1987); Couch v. Astrue, 267 Fed. Appx. 853, 856 (11th Cir. 2008). In fact, the regulations provide that daily activities are to be considered in determining the credibility of the plaintiff's subjective complaints. 20 C.F.R. 404.1529(c)(3)(i).

Contrary to the plaintiff's contention, the evidence regarding her activities of daily living clearly supports the law judge's credibility determination. The plaintiff alleges total disability from her impairments, yet, as the law judge noted, her activities of daily living "include cleaning the

kitchen, cooking, and water aerobic classes" (Tr. 15). The plaintiff "also admitted driving for short distances" (id.). In a pain questionnaire, the plaintiff stated that, although her husband sets up the ironing board, she "[i]ron[s] in small increments (20 mins)" (Tr. 137). On February 15, 2010, the plaintiff told Dr. Karan K. Bhatia, a physician at the Bond Clinic, that she can walk 3-4 miles (Tr. 326). Significantly, despite her testimony on September 9, 2011, regarding an alleged difficulty with sitting (see Tr. 33), the plaintiff traveled from Florida to Rochester, New York from August 16 through September 8, 2011, for a vacation to visit family (Tr. 39, 403).

The plaintiff argues that "[t]here is ample medical evidence on file showing that [she] consistently and frequently sought medical treatment for her pain. She complained consistently of pain from which there was little relief" (Doc. 19, p. 11). However, as the law judge explained (Tr. 17):

> While it is acknowledged that complaints of pain are frequently documented by the medical records, the claimant's lack of credibility is again noted in regard to the subjective allegations. The undersigned also notes that treatment records rarely if ever reveal difficulty in activities that would suggest an inability to perform within the residual functional capacity outlined above.

In all events, the law judge's decision to discount the plaintiff's subjective complaints of pain is supported by the medical evidence of record. For example, in March 2009, a nurse practitioner at the Gessler Clinic noted that "[t]he patient's pain is described as constant, burning, achy, worse with stress and made better by injection or meds. Pain intensity is moderate, level of function is medium, pain relief is moderate to complete relief. The patient can tolerate her current therapy" (Tr. 226). Further, a January 2010, physical therapy treatment note states "Pt reports pain decreased to 4-5/10 post modalities" (Tr. 287). On February 9, 2010, Dr. Robert K. Lerner said that the plaintiff "does feel that her right hip symptoms have improved, and she continues to work on hip/low back exercises" (Tr. 301). In April 2010, after undergoing a right shoulder arthroscopy the previous month, the plaintiff "report[ed] that she is doing well without any particular complaints" (Tr. 329). Finally, as the law judge discussed, "[w]hen examined by Dr. [Ada] Lopez-Mendez in February 2010, the claimant had full and painless range of motion of both hips" (Tr. 17).

In a cursory manner, the plaintiff asserts that the law judge "failed to consider the numerous impairments in combination" (Doc. 19, p.

12). This undeveloped argument fails to comply with the Scheduling Order and Memorandum Requirements, and is, therefore, appropriately deemed forfeited (Doc. 15, p. 2).

Nevertheless, the plaintiff's contention fails. Thus, the law judge expressly acknowledged that he had to consider the combined effects of the plaintiff's impairments (Tr. 12). Moreover, the law judge found that the plaintiff had several severe impairments (Tr. 13), and he clearly considered the combined effects of those impairments in determining the plaintiff's residual functional capacity (Tr. 14).

In sum, the law judge properly applied the Eleventh Circuit pain standard and, based on that standard, made a reasonable and adequately explained decision to decline to credit fully the plaintiff's subjective complaints. Notably, the law judge did not completely reject the plaintiff's subjective complaints, but found that they restricted her to a limited range of light work.

B. As a second issue, the plaintiff argues that the law judge failed to assess properly the evidence of the treating and examining physicians (Doc. 19, pp. 12-14). In this connection, the plaintiff points

generally to the treatment records from the Bond Clinic and the Gessler Clinic without even mentioning the opinion of any particular treating or examining doctor.

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In September 2010, Dr. Lopez-Mendez, a physician with the Gessler Clinic, completed a Fibromyalgia Residual Functional Capacity Questionnaire (Tr. 495-500). On the same day, Dr. Lopez-Mendez also completed a Physical Residual Functional Capacity Questionnaire (Tr. 501-04). On those forms, Dr. Lopez-Mendez concluded that "the patient [will be] unable to hold a regular job even a sedentary one in the near future" (Tr. 500). Dr. Lopez-Mendez stated that her assessments were based "by patient's report"' (Tr. 496, 497, 498, 502, 503).

The law judge considered the opinions of Dr. Lopez-Mendez, but gave them little weight. Thus, the law judge explained (Tr. 15):

> As for the opinion evidence, the undersigned has carefully considered the residual functional capacity assessments offered by Dr. Ada Lopez-Mendez, M.D. exhibited as 13F and 14F. As indicated by the statement at the top of page 3 on exhibit 13F, the assessment is based on the claimant's subjective allegations. On page three of the questionnaire, Dr. Mendez indicated, "This is by patient's report". Thereafter, Dr. Mendez referred to the claimant's subjective statements several times within the assessment. As for the second residual functional capacity, it too is admittedly based, at least in part, on the claimant's subjective allegations. This is evidenced by several references to the claimant's subjective allegations. Based on the credibility of the claimant as analyzed above, little weight is given to the opinions (Exhibits 13F and 14F).

The plaintiff makes no attempt to challenge the law judge's finding regarding Dr. Lopez-Mendez's opinions. In fact, as indicated, Dr. Lopez-Mendez is not even mentioned in connection with this issue (Doc. 19, pp. 12-14). In light of the Scheduling Order and Memorandum Requirements, any challenge to the law judge's assessment of Dr. Lopez-Mendez's opinions is forfeited for the failure to develop it (Doc. 15, p. 2).

In all events, the law judge's reasons support his decision to discount the opinions of Dr. Lopez-Mendez. In other words, the law judge has shown good cause for not giving those opinions considerable or substantial weight.

With the exception of the opinions from Dr. Lopez-Mendez, the records from the Gessler Clinic and the Bond Clinic contain no functional limitations. While they do refer to diagnoses of medical conditions, that is not sufficient to establish disability. Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra.

Contrary to the plaintiff's argument (Doc. 19, p. 13), the law judge did not "disregard year long medical relationships" the plaintiff had with the providers at the Gessler Clinic and the Bond Clinic. As the

Commissioner points out (Doc. 20, p. 13), the law judge fully considered and discussed this evidence in his decision (see Tr. 15-17).

The plaintiff suggests that the law judge improperly based his residual functional capacity assessment on the opinion of Dr. James Patty, a nonexamining reviewing physician (Doc. 19, p. 13). The reports of nonexamining reviewing physicians may be credited over the opinion of the treating physician when good cause is stated for discounting the treating physician's opinion. See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); Forsyth v. Commissioner of Social Security, 503 Fed. Appx. 892, 893 (11th Cir. 2013) (law judge stated good cause to afford more weight to the opinion of a nonexamining physician than to the opinion of the treating physician). As discussed above, the law judge stated good cause for giving only little weight to the opinions of Dr. Lopez-Mendez.

It is appropriate to note that the law judge did not simply adopt Dr. Patty's opinion. Rather, the law judge discussed, at length, the plaintiff's testimony and medical history (Tr. 14-17). Based on his review of the evidence, the law judge went "further, giving the claimant the benefit of every

uncertainty and provided a limitation for bilateral overhead reaching and additional environmental limitations" that Dr. Patty had not opined (Tr. 16).

The plaintiff also challenges the law judge's consideration of a treatment note from February 2010, which indicates that the plaintiff can walk from 3 to 4 miles (Doc. 19, pp. 13-14). The plaintiff argues that this treatment note predated her shoulder surgery and cancer.

However, there is no evidence that the plaintiff's shoulder surgery and breast cancer caused any functional limitations beyond the law judge's residual functional capacity. See Moore v. Barnhart, supra; McCruter v. Bowen, supra. Thus, as indicated, the plaintiff reported in April 2010, "that she is doing well without any particular complaints" after the right shoulder arthroscopy (Tr. 329). In addition, the law judge explained that, "[a]s for the claimant's breast cancer, records indicate that she was treated with surgery, chemotherapy, and radiation, but save for a somewhat brief wound complication, evidence does not indicate complications or recurrences imposing additional functional limitations" (Tr. 17).

In further support of this contention, the plaintiff points to her hearing testimony that she could walk no more than 20 minutes (Doc. 19, pp.

13-14). This argument is unpersuasive. As previously discussed, the law judge reasonably discounted the plaintiff's credibility.

C. The plaintiff next complains that the law judge "failed to properly compare the requirements of [the plaintiff's] past work to the residual functional capacity found for [the plaintiff]" (id., p. 14). This contention similarly lacks merit.

The plaintiff has the burden to show that she cannot return to prior work. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). An ability to return to work exists either if the plaintiff can do the job as she actually performed it, or if she can perform the job as it is done in the national economy. See Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). In this case, the law judge concluded that the plaintiff could perform the past job of dental assistant "as generally performed" (Tr. 17).

The plaintiff contends that the law judge's residual functional capacity limited the plaintiff to occasional bending, but the position of dental assistant would require the plaintiff "to bend and stoop over [patients] in the dental chair to treat the teeth" (Doc. 19, p. 16). As indicated, the law judge found that the plaintiff could return to her past work of dental assistant as it

is generally performed in the national economy (Tr. 17). According to the Dictionary of Occupational Titles (DOT), the job of dental assistant requires the plaintiff to perform only occasional stooping. See DICOT 079.361-018, 1991 WL 646851.

The plaintiff asserts that the law judge's "decision contains no analysis of the requirements of the past work" (Doc. 19, p. 17). The law judge, however, based his views of the plaintiff's past relevant work upon the testimony of the vocational expert, who stated that his testimony was consistent with the DOT (Tr. 45). The Eleventh Circuit has held that, where there is a conflict between the expert's testimony and a job description contained in the DOT, "the VE's testimony 'trumps' the DOT." Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999). Obviously, where, as here, the expert's testimony is consistent with the DOT, there is ample evidence that the plaintiff can perform the job of dental assistant position as it is generally performed.

Pointing to her hearing testimony, the plaintiff further argues that she cannot perform essential requirements of the dental assistant job, such as holding and maneuvering dental tools (Doc. 19, p. 17). This contention fails

for the following reasons. In the first place, the plaintiff cannot controvert the law judge's finding regarding her ability to perform past work by reliance on her own testimony. As discussed above, the law judge discounted the plaintiff's testimony to the extent that it was inconsistent with the residual functional capacity assessment.

Moreover, the evidence does not compel a finding that the plaintiff is limited with respect to handling or fingering. To the contrary, Dr. Patty opined that the plaintiff has no handling or fingering limitations (Tr. 372). Further, after examining the plaintiff's wrists and hands on January 12, 2010, Dr. Lerner said (Tr. 279):

> Both hands showed normal wrist and finger alignment without restrictions. Full ROM to all fingers and wrist. Tinel's and Phalen's maneuvers were negative for induced paresthesias. Finkelstein sign, Froment's signs were negative. Grind sign for the thumb was negative. During grip testing and finger flexion, there was no triggering or weakness of grip noted. Skin showed no unusual calluses or contractures. Nail beds were normal.

In short, the plaintiff has failed to show that the law judge erred in evaluating her past relevant work.

D. Finally, the plaintiff asserts that the law judge's residual functional capacity failed to include all of the plaintiff's limitations (Doc. 19, pp. 18-19). However, the plaintiff has not shown that the residual functional capacity finding and the corresponding hypothetical question were deficient.

The plaintiff contends that "there was no consideration to limitations in [her] arms and hands due to her cervical problems in arriving at the RFC" (id., p. 18). In this connection, the plaintiff argues that "[i]t is difficult to conceive that [she] could use her hands all day to perform work as a dental assistant, in light of her cervical problems and arthritis" (id., pp. 18-19). However, there is no evidence that the plaintiff had any functional limitations from her hand and arm pain beyond the law judge's residual functional capacity.

To the extent that the plaintiff suggests that the hypothetical question to the vocational expert was inadequate, any such contention is unavailing. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Ingram v. Commissioner of Social Security Admin., 496 F.3d 1253, 1270 (11th Cir. 2007), quoting Wilson

v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).   However, the administrative law judge is not required to include restrictions in the hypothetical question that he properly finds are unsupported.  Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

The plaintiff seems to contend that the law judge's hypothetical question failed to incorporate limitations with the plaintiff's use of her hands and arms.  Any such limitations were discounted in the law judge's credibility determination.  Therefore, those discounted limitations did not need to be included in the hypothetical question.

Moreover, the hypothetical question is not deficient as long as it corresponds to the residual functional capacity.  Here, the residual functional capacity clearly matches the hypothetical question that the law judge posed to the vocational expert (compare Tr. 14 with Tr. 43-44). Consequently, the hypothetical question is not flawed.

The plaintiff also suggests that the law judge failed to consider her pain in her hip and lower extremities and the lack of flexibility in her neck (Doc. 19, p. 19).  As the Commissioner correctly responds, however, the law judge specifically discussed the plaintiff's complaints of pain in her hips,

back, and neck, and he found the plaintiff's hip and neck impairments to be severe (Doc. 20, p. 16). Thus, the law judge's findings were not deficient in that respect.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this _8ᵗʰ_ day of September, 2014.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE